IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| W. JAMES KERNAGHAN, II | : | |
| & | : | CIVIL ACTION |
| ON TARGET ACQUISITION, LLC | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN TOWER CORP., | : | |
| & | : | |
| METROPCS COMMUNICATIONS, INC. | : | NO: 09-4371 |
| Defendants. | : | |

**M E M O R A N D U M**

SITARSKI, M.J.                                                        September 8, 2010

Currently pending before the Court is a motion for summary judgment filed by Defendant Metro PCS Communications, Inc. For the following reasons, the motion will be GRANTED.

**I.     INTRODUCTION**

On September 25, 2009, Plaintiffs W. James Kernaghan, II, and On Target Acquisition, LLC ("On Target") initiated this lawsuit by filing a Complaint against Defendants American Tower Corp. ("American Tower") and MetroPCS. On October 16, 2009, Plaintiffs filed an Amended Complaint amending the name of Defendant MetroPCS to MetroPCS Communications, Inc. t/a/d/b/a MetroPCS Wireless, Inc. t/a MetroPCS ("MetroPCS"). Plaintiffs' Amended Complaint alleges breach of contract against American Tower and tortious interference with contract against MetroPCS. American Tower and MetroPCS filed Answers to

1

the Complaint on December 9, 2009, and December 16, 2009, respectively.

This matter initially was assigned to District Court Judge Juan R. Sanchez. On January 11, 2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, and the matter was referred to me. (Doc. Nos. 16 & 17). Thereafter, on April 30, 2010, MetroPCS filed the instant Motion for Summary Judgment. (Doc. No. 22).

Defendant MetroPCS moves for summary judgment on the grounds that Plaintiffs' claim for tortious interference is barred by the applicable statute of limitations. *See* Def.'s Br. in Sup. at 1-8. Plaintiffs filed their Answer to Defendant's Motion, (Doc. No. 24), and Defendants filed a Reply Brief. (Doc. No. 25). Fact discovery closed on July 2, 2010. (Doc. No. 21). Accordingly, this matter is now ripe for disposition.

## II.  BACKGROUND

Mr. Kernaghan is the owner and President of On Target, which is in the business of scouting, securing and maintaining locations for wireless and broadcast communication sites. Comp. ¶ 3. In addition to providing these site acquisition services through On Target, Mr. Kernaghan manages several properties suitable for wireless communication sites in the Tri-State area. Comp. ¶ 13. American Tower owns and operates wireless communication sites throughout the United States. Comp. ¶ 4. Metro PCS provides wireless broadband communication services. Comp. ¶ 5.

Beginning in 2007, MetroPCS sought to expand its network in the Philadelphia area ("MetroPCS Expansion Project" or "Project"). Comp. ¶ 5; Def.'s Br. in Sup. at 2. The

MetroPCS Expansion Project would necessitate site acquisition and site management services, among other things. Comp. at Exs. A & B. MetroPCS hired American Tower as the general contractor for the Project. Comp. ¶ 8; Def.'s Br. in Sup. at 2.

In May 2007, Mr. Kernaghan contacted MetroPCS to pitch On Target's services for the Project. Comp. ¶ 8-10. MetroPCS informed Mr. Kernaghan that Phase I of the Project had already been released. Comp. ¶ 11. Mr. Kernaghan continued to pursue a portion of work on the Project through his contacts at American Tower. Comp. ¶ 14. In August of 2007, American Tower agreed to use On Target as an independent contractor for site acquisition services on the MetroPCS Expansion Project. Comp. ¶ 14. American Tower and On Target then executed a professional services agreement ("Agreement"). Comp. ¶ 14 & Ex. C; Def.'s Br. in Sup. at 3.

This Agreement is a master agreement whereby On Target agreed to provide services as an independent contractor as may be requested by American Tower via purchase order. Comp. at Ex. C. The Agreement provides for a term of two years, unless terminated by mutual agreement or in accordance with Section Two of the Agreement. Comp. ¶ 17-18 & Ex. C. Section Two allows American Tower to terminate for a default in performance or for convenience. Comp. at Ex. C. Termination for convenience simply requires American Tower to deliver written notice to On Target at least ten business days in advance of the desired termination date. Comp. ¶ 18 & Ex. C. MetroPCS is not a party to the Agreement, and neither MetroPCS nor the MetroPCS Expansion Project are named in the Agreement. Comp. at Ex. C.

American Tower apparently issued purchase orders pertaining to the MetroPCS Expansion Project, and beginning in August 2007, On Target began work on thirty-four sites relative to the MetroPCS Expansion Project. Comp. ¶ 20. Shortly thereafter, in September 2007,

American Tower discontinued using On Target for the Project. Comp. ¶ 25.

On September 11, 2007, Deborah Baker, Project Manager for American Tower, emailed Mr. Kernaghan regarding discontinuation of On Target's work. Def.'s Br. in Sup. at Ex. B. Ms. Baker's email informed Mr. Kernaghan that On Target had been released from the MetroPCS Expansion Project "due to Metro's concerns," but the nature of those concerns was not stated. Def.'s Br. in Sup. at Ex. B. Plaintiffs claim that Mr. Kernaghan "believed MetroPCS had demanded his termination for a personal reason, that is, the receipt of an anonymous letter concerning his relationship with an Amy Mahoney." Plf.'s Br. in Opp. at 5.

On October 3, 2007, Mr. Kernaghan and Tom Christopher, Director of Project Management for MetroPCS, exchanged emails concerning the reason MetroPCS had asked that On Target be removed from the MetroPCS Expansion Project. Comp. ¶ 27-28 & Exs. D & E. Mr. Kernaghan inquired why MetroPCS "felt that [On Target] was going to possibly run around and lease up sites where [MetroPCS] might want to install . . . ." Comp. at Ex. D. Mr. Kernaghan also inquired about Ms. Mahoney's involvement in the matter. Comp. at Ex. D. In response, Mr. Christopher acknowledged that MetroPCS did have concerns about conflicts arising from Mr. Kernaghan's efforts in building his own management portfolio, and he explained that he "did not want to be in a position to always wonder if we were pushed to a LL that you had an agreement with vs. an [American Tower] site." Comp. ¶ 28 & Ex. E. Mr. Christopher also informed Mr. Kernaghan that Ms. Mahoney was not a factor in MetroPCS' decision to request American Tower's termination. Comp. at Ex. E.

Plaintiffs claim that MetroPCS had no privilege or justification for directing American Tower to discontinue working with On Target. Comp. ¶ 45. Plaintiffs claim that the action of

MetroPCS was tortious interference, and Plaintiffs filed suit on September 25, 2009.

### III.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* at 248-29. It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or

5

suspicions. *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

**IV.    DISCUSSION**

Plaintiffs claim that MetroPCS interfered with the Agreement between On Target and American Tower by requesting that American Tower discontinue using On Target for the MetroPCS Expansion Project. Defendant MetroPCS argues that Plaintiffs' claim for tortious interference is barred by the applicable statute of limitations. *See* Def.'s Br. in Sup. at 1-8. The parties agree that the cause of action is subject to a two year statute of limitations. 42 Pa.C.S.A. § 5524(3). "The statute of limitations begins to run when the underlying cause of action accrues." *CGB Occupational Therapy, Inc. V. RHA Health Services, Inc.*, 357 F.3d 375, 383 (3d Cir. 2004)(citing *Ponoco Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983)). "In Pennsylvania a cause of action accrues on the date the injury is sustained, or when 'a party has a legal right to institute suit and can maintain a cause of action.'" *DiCicco v. Willow Grove Bank*, 308 F.Supp.2d 528, 534 (E.D.Pa. 2004)(quoting *ITG, Inc v. Price Waterhouse*, 697 F.Supp. 867, 870-71 (E.D.Pa. 1988)). The elements of a claim for tortious interference of contract are as follows:  (1) the existence of a contractual, or prospective contractual relation; (2)

6

purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *CGB Occupational Therapy*, 357 F.3d at 384 (citing *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)). Here, the cause of action accrued on or before September 11, 2007, when Plaintiffs received notice that the Agreement had been terminated due to the concerns of MetroPCS.

There is no question that on September 11, 2007, Mr. Kernaghan was informed that On Target had been released from the MetroPCS Expansion Project "due to Metro's concerns." Def.'s Br. in Sup. at Ex. B; Plt. Rep. Br. at 6. Plaintiffs do not argue that the elements necessary to sustain a cause of action for tortious interference of contract were not present as of September 11, 2007. Rather, Plaintiffs argue that the "discovery rule" operates to toll the statute until October 3, 2007, when Mr. Kernaghan became aware of the "exact reason" why his contract had been terminated. Plf.'s Br. in Opp. at 2 & 7. Plaintiffs argue that Mr. Kernaghan's discovery of the "true reason for MetroPCS' interference" should be the date the statute begins to run. Plf.'s Br. in Opp. at 1-7. However, the discovery rule will not apply simply because Plaintiffs were uncertain about why MetroPCS had requested their removal from the Project.[1]

"Pennsylvania courts apply the discovery rule 'in only the most limited of circumstances.'" *Harry Miller Corp. v. Mancuso Chemicals Limited*, 469 F.Supp.2d 303, 313

---

[1] The Court notes that Mr. Kernaghan's October 3, 2007, email indicates that he already knew that MetroPCS may have requested termination due to potential conflicts with buildings that Mr. Kernaghan managed. Mr. Kernaghan's email to Mr. Christopher asks why MetroPCS thought he would "run around and lease up sites where [MetroPCS] might want to install." Comp. at Ex. D. Thus, Plaintiffs knew that MetroPCS may have concerns about being "pushed" to a site that Mr. Kernaghan managed. Comp. at Ex. E.

(E.D.Pa. 2007)(quoting *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 171 (1997)). Where the statutory period has expired, "the discovery rule triggers the tolling of the statute of limitations when the plaintiff is 'unable, *despite the exercise of reasonable diligence*, to discover the injury or its cause.'" *Harry Miller Corp. v. Mancuso Chemicals Limited*, 469 F.Supp.2d 303, 312 (E.D.Pa. 2007)(quoting *Mest v. Cabot*, 449 F.3d 502, 510 (3d Cir. 2006)(emphasis supplied).

Ordinarily, a jury must decide the factual question of "whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858-859 (2005). However, a court may decide that the discovery rule does not apply as a matter of law where reasonable minds would not differ about "whether the plaintiff knew or should have known through reasonable diligence of his injury and the cause of his injury." *Harry Miller Corp.*, 469 F.Supp.2d at 313(citing *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858-859 (2005)).

"The salient point giving rise to [the application of the discovery rule] is the *inability* of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine*, 870 A.2d at 858 (citing *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983))(emphasis added). The question is not what the plaintiffs knew of the injury done him, but what "might he have known by the use of the means of information within his reach, with the vigilance the law requires. *Fine*, 870 A.2d at 858 (citations omitted). "'One claiming the benefit of the discovery exception bears the burden of establishing that [he] falls within it.'" *PSC Info Group v. Lason, Inc.*, 681 F.Supp.2d 577, 590 (E.D.Pa. 2010)(quoting *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995)). Thus, Plaintiffs "bear the burden of demonstrating reasonable diligence in determining the existence of

8

injury and cause of injury." *Harry Miller Corp.*, 469 F.Supp.2d at 313(citing *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1162 (3d Cir. 1979)).

Plaintiffs acknowledge that Mr. Kernaghan's first inquiry to MetroPCS immediately provided confirmation of all the facts relative to their claim for tortious interference. The exhibits attached to the Amended Complaint show that within forty minutes of Mr. Kernaghan's email, Mr. Christopher responded with unequivocal, substantive information. Comp. at D & E. Specifically, on October 3, 2007, Mr. Kernaghan exchanged emails with Mr. Christopher confirming the reason why MetroPCS had requested On Target's removal from the Project. Comp. ¶ 27-28 & Exs. D & E. Mr. Christopher readily acknowledged MetroPCS' concerns about conflicts arising from Mr. Kernaghan's efforts in building his own management portfolio at the same time that Mr. Kernaghan was providing site acquisition services for the MetroPCS Expansion Project. Comp. ¶ 28 & Ex. E.

Plaintiffs have not alleged that prior to October 3, 2007, they relied on misinformation or that they did not receive a response to an earlier inquiry. There is no indication that MetroPCS was ever unwilling to communicate with Mr. Kernaghan concerning their reasons for requesting On Target's termination. Plaintiffs only had to ask. Thus, Plaintiffs cannot show that they were unable to determine that they had been injured with reasonable diligence. See *Harry Miller Corp. v. Mancuso Chemicals Limited*, 469 F.Supp.2d 303, 316 (E.D.Pa. 2007)(The plaintiff "cannot not contend it was unable to know" it had been injured where the plaintiff did not even try to find out about the defendant's role in the alleged wrongdoing.)

Application of the discovery rule requires that the plaintiffs demonstrate that even with the exercise of reasonable diligence, they were unable to determine the existence of injury and

9

cause of injury. Here, Plaintiffs are not arguing that they were *unable* to determine that they had been injured. Plaintiffs have not alleged that they were impeded in their efforts to obtain the information. Plaintiffs simply state that they were unaware or unsure of all of the facts relative to their claim until they made their first inquiry. Plaintiffs only argue that prior to the email exchange on October 3, 2007, Mr. Kernaghan believed "personal reasons" motivated MetroPCS' actions. Plf.'s Br. in Opp. at 5. However, "'[l]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.'" *DiCicco v. Willow Grove Bank*, 308 F.Supp.2d 528 (E.D.Pa. 2004)(quoting *Lang v. Cont'l Assur. Co.*, 54 Fed.Appx. 72, 74 (3d Cir. 2002)).

The purpose of the discovery rule is not to toll the statute of limitations until the plaintiff decides to fully investigate their claim; the purpose is to "exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." Here, Plaintiffs' injury was ascertainable on the date Mr. Kernaghan was informed that On Target had been released from the MetroPCS Expansion Project "due to Metro's concerns." Def.'s Br. in Sup. at Ex. B.

Plaintiffs took no action to confirm MetroPCS' reason for requesting their termination until October 3, 2007. Plaintiffs have not alleged that they relied on misinformation, or that they did not receive a response to an earlier inquiry. Plaintiffs have not met their burden of demonstrating reasonable diligence in determining the existence of the injury and the cause of the injury. A reasonable jury could not find that Plaintiffs exercised reasonable diligence or that Plaintiffs were unable to know of the injury and its cause. Thus, Plaintiffs are not entitled to the

benefit of the discovery rule, and the statute of limitations, which expired on September 11, 2009, will not be tolled.

## V.     CONCLUSION

Controlling Supreme Court and Third Circuit precedent mandate the entry of summary judgment in favor of Defendant MetroPCS.[2] Plaintiffs' claim for tortious inference with contract was filed after the statute of limitations had expired, and Plaintiffs are not entitled to tolling. Accordingly, the Court grants summary judgment in favor of Defendant MetroPCS and against Plaintiffs as to Count II of Plaintiffs' Amended Complaint.  An appropriate Order follows.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

[2]     Plaintiffs argue that summary judgment is premature because additional discovery is needed.  Plaintiffs argue that the depositions of Ms. Baker and Mr. Christopher might create questions of fact.  However, the parties were ordered to complete fact discovery by July 2, 2010, and Plaintiffs have not informed the Court of any new developments arising from further discovery.  Moreover, the Court has found that there are no disputed facts concerning whether Plaintiffs' injury was ascertainable as of September 11, 2007, or concerning Plaintiffs' lack of diligence in pursuing their claim.